IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   4:08cr49/RH/CAS
                                                    4:11cv589/RH/CAS
DON WARNER REINHARD

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 108).  The Government filed a response (doc. 113) and Defendant did not file a reply, despite having been afforded the opportunity, and an extension of time, to do so (*see* docs. 116–118, 121, 124, 125). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

# PROCEDURAL BACKGROUND[1]

Defendant pleaded guilty to seven counts of a twenty-three count indictment in which he was charged with various serious financial crimes (*see* docs. 1, 54). Specifically, Defendant pleaded guilty to making a false statement to a federally insured financial institution in conjunction with obtaining a loan ("Count One"); making a false declaration regarding his reportable assets in a bankruptcy case ("Count Nine"); submitting a false document in conjunction with a pending bankruptcy proceeding ("Count Twelve"); two counts of transferring or concealing property belonging to him or another during bankruptcy ("Counts Seventeen and Nineteen"); and making or procuring false statements on a federal tax return in two different years ("Counts Twenty-One and Twenty-Three") (doc. 54).  In exchange for Defendant's guilty plea, the Government agreed to dismiss the remaining counts against Defendant (doc. 54 at 3).

Defendant entered his plea pursuant to a written plea agreement and statement of facts (docs. 53–55).  The statement of facts included the Government's calculation that the loss amount was approximately $995,874.00 (doc. 53 at 7).  At rearraignment, retained defense counsel Clyde Taylor noted that there was agreement that the total losses were not more than $995,000, but that they could be less (doc. 57 at 9–10).  The defense also disputed the Government's assertion that Defendant's failure to disclose certain leases was done with knowledge that they should have been disclosed, but other than that accepted the facts as set forth in the signed statement of facts as true

---

[1]Detailed statements of facts describing the offense conduct are set forth in the statement of facts (doc. 53)  and the Presentence Investigation Report (doc. 67) and will be set forth herein only as necessary for full discussion of Defendant's claims.

(*id.* at 9–11).  The court also went through the statement of facts in some detail to

ensure that there was a factual basis for Defendant's plea, before explaining the

penalties Defendant faced (*id.* at 11–21).  Defendant was warned that it was impossible

to accurately predict what his sentence would be and warned that he could not take

back the guilty plea merely because he was dissatisfied with his sentence (*id.* at 21–23).

A Presentence Investigation Report ("PSR") was prepared in preparation for

sentencing (doc. 67).[2]  Counts One, Nine, Twelve, Seventeen and Nineteen were

grouped for sentencing purposes (PSR ¶ 63).  The adjusted offense level of 25 for

these offenses was comprised of a base offense level of 7, a fourteen level adjustment[3]

for the loss amount of $562,119.19, a two level adjustment because misrepresentations

were made during the course of a bankruptcy proceeding, and a two level increase due

to the relocation of assets and the use of sophisticated means (PSR ¶ 64–71).  Counts

Twenty-One and Twenty-Three were grouped (PSR ¶ 72).  The adjusted offense level

for these offenses was 22, comprised of a base offense level of 20 and a two level

adjustment for sophisticated means (PSR ¶¶73–78).  Defendant's total offense level,

after the multiple count adjustment and the three level adjustment for acceptance of

responsibility, was 24 (PSR ¶¶ 79–86).  Defendant had a criminal history category of I,

and the corresponding advisory guidelines range based on these preliminary

calculations was 51 to 63 months (PSR ¶¶ 92, 128).

---

[2]The PSR contained in the electronic record is the original PSR and does not reflect changes made by the court at sentencing.

[3]This adjustment was reduced to a twelve level adjustment at sentencing.

Defendant filed several written objections, primarily to the inclusion of specific items in the loss calculation, but also to the enhancement for sophisticated means (PSR ¶¶ 145, 150, 152, 154, 156, 158, 160, 164).  The parties agreed that the objections were legal, rather than factual (doc. 75 at 3).  The court sustained some of the defense objections to the loss calculation, which resulted in a two level reduction in the adjustment in paragraph 65 of the PSR (from fourteen to twelve levels), and a two level decrease in Defendant's total offense level (*see id.* at 64–67, 74).  The defense withdrew its objection to the two level adjustment for sophisticated means (*id.* at 68–71). The court noted that even if this objection had not been withdrawn, the adjustment was proper (*id.* at 71–72).  The adjusted guideline range was 41 to 51 months imprisonment, and the court sentenced Defendant to a term of 51 months imprisonment, at the high end of the guidelines range (*id.* at 97).  It also ordered that Defendant pay restitution in the amount of $667,890.28, which included $171,280.28 to Wachovia Bank and $496,610.00 to the Internal Revenue Service (doc. 65).

Defendant appealed, raising two challenges to the district court's loss assessment under § 2B1.1(b)(1) (doc. 102 at 5).  Specifically, he claimed that the district court erred by using the appraised value of three glass gondolas to measure the bankruptcy estate's loss, although one of the items sold in an online auction for significantly less only three years later (*id.* at 6).  The court found no error in the district court's finding that the formal appraisals were a better indication of value than an online auction price (*id.* at 8).

Second, Defendant asserted that the district court erred in including the amount of his loan default in the bank fraud, arguing that the bank was going to lose money regardless of his fraud (doc. 102 at 6).  The Eleventh Circuit declined to decide this issue, finding that even if there was error in the court's consideration of the $147,240.76 deficiency arising from Defendant's default on his boat loan, the same 12-point offense level adjustment would have applied (*id.* at 10).  However, the appellate court reversed the district court's inclusion of this loss to the bank in the restitution amount (*id.* at 15).

After the mandate issued, the district court entered an amended judgment deleting the requirement that Defendant make restitution to Wachovia Bank (doc. 107).  The remaining total amount of restitution owed was $496,610.00 (doc. 65).

In the present motion, Defendant raises five grounds for relief.  The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have

been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn, 365

F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a

section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is,

alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S.

at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of

ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503

(2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  In

order to prevail on a constitutional claim of ineffective assistance of counsel, a

defendant must demonstrate both that counsel's performance was below an objective

and reasonable professional norm and that he was prejudiced by this inadequacy.

Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362,

390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying

Strickland, the court may dispose of an ineffective assistance claim if a defendant fails

to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v.

United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of

Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's

performance in a highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance."

Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at

689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); Lancaster v.

Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not

entitled to error-free representation").  Counsel's performance must be evaluated with a

high degree of deference and without the distorting effects of hindsight.  Strickland, 466

U.S. at 689.  To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did

take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations

omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an

experienced trial counsel, the presumption that counsel's conduct was reasonable is

even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at

1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).

     Counsel is not ineffective under Strickland for failing to preserve or argue a

meritless claim.  Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir.

2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012)

(failure to preserve meritless Batson claim not ineffective assistance of counsel);

Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not

ineffective for failing to make a meritless objection to an obstruction enhancement);

Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective

for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th

Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by

prosecutor, or accurate statements by prosecutor about effect of potential sentence);

Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to

make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359

(11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably

believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th

Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless

issue); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not

ineffective for informed tactical decision not to make what he believed was a meritless

motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, in analyzing counsel's performance, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly

unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004);

Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).

Likewise, affidavits that amount to nothing more than conclusory allegations do not

warrant a hearing.  Lynn, 365 F.3d at 1239.

Ground One: the Gondolas

Among the assets that Defendant did not disclose to the bankruptcy court were

three glass gondolas (artwork) that had been appraised at approximately $40,000 each.

Defendant now claims that counsel was constitutionally ineffective because he failed to

argue either that Defendant did not have to report the three gondolas because they

were completed gifts to his then-wife, Sarah Reinhard, during their marriage, or

alternatively, that they were owned by Defendant and his wife as tenants by the entirety.

Therefore, because the assets were exempt property, Defendant argues, the $120,000

value of the three gondolas was not properly considered a loss to the bankruptcy

trustee.

Defendant admitted in the statement of facts that he signed in conjunction with

his plea agreement that he had failed to disclose significant assets including one glass

artwork piece that had been purchased for approximately $40,000 (doc. 53 at 3).[4]  Thus,

he has already admitted that at least one of the gondolas should have been disclosed

and that his failure to do so was improper.  He also admitted with respect to Count

---

[4]In Count Nine of the indictment, Defendant was charged with failing to disclose his
joint ownership of three glass gondolas (doc. 1 at 6).

Seventeen that he had transferred and disposed of an unreported asset – a glass

gondola (doc. 53 at 3–4).[5]

Defendant's argument that he was not required to disclose the gondolas

overlooks the fact that Schedule B of his bankruptcy petition requires the debtor to list

"all personal property of the debtor of whatever kind"(*see* doc. 113, exh. A at 1).  A

married debtor is required to indicate whether husband, wife, or both own the property

(*id.*).  Defendant listed assets on the form that were owned either by Defendant or by

both Defendant and his then-wife, jointly (*id.* at 1–4).  The debtor may then list on

Schedule C any property that is claimed to be exempt, and the reason for the exemption

(*id.* at 5).  Two of the claimed exemptions on Schedule C are for property that

Defendant and his wife owned as tenants by the entirety, and which was also listed on

Schedule B (*id.*).  Thus the mere fact that property was owned as tenants by the entirety

does not excuse Defendant's failure to disclose it.

Defendant's assertion that the gondolas were "decorative household items" (doc.

108 at 14) is also suspect.  Schedule C includes a distinct place to list "art objects" or

"collectibles" (*see* doc. 113, exh. A at 5).  The form reflects that the items listed under

this section of Defendant's form, which have a listed value of $100.00, are claimed as

exemptions under article X, section 4(a)(2) of the Florida Constitution.  The gondolas,

---

[5]Despite Defendant's admission of wrongdoing, as evidenced by his guilty plea, Defendant now contends that he sold the gondola on eBay after conferring with his bankruptcy attorney (doc. 108 at 13).   The Government counters by saying that Defendant's former bankruptcy attorney was prepared to testify at Defendant's trial that "a debtor is not allowed to transfer any or conceal any assets that he possesses, and that he never advised the defendant that he could not or should not disclose any items in the financial statements that were filed as part of the defendant's bankruptcy" (doc. 113 at 10).

with a total appraised value of $120,000, would not be protected by this section, which allows only for a personal property exemption only to the value of $1,000.  Fla. Const. art. X, § 4(a)(2).   Therefore, Defendant's assertion that the gondolas would have been exempt is not well-supported.

Furthermore, the undersigned notes that the district court went to great lengths to explain the sentence it imposed (doc. 75 at 97–104).   Although the court remained within the advisory guidelines range, it noted that Defendant's offense was "among the most serious offenses that would fall into this guideline range based on this calculation" (doc. 75 at 99).  It noted a "pattern of fraudulent conduct," and the fact that Defendant had made almost a million dollars in income, but chose to underpay his taxes by over $200,000 to support a lavish lifestyle, while many people live on $30,000 and pay their taxes (*id.* at 100–101).   The court noted that Defendant's pattern of continuing with his lavish lifestyle and writing a letter essentially taunting an individual who was trying to get his boat back from Defendant evidenced a pattern significantly different than what was seen in most fraud cases and showed more culpability than in other fraud cases (*id.* at 101–102).   In light of all the uniquely egregious circumstances of this case, there is no suggestion that the court's sentence would have been different even if a different advisory guideline range had applied to Defendant's case.   Defendant has not shown that counsel was constitutionally ineffective for his failure to present the argument Defendant now raises, and he is not entitled to relief.  *See* <u>Freeman</u>, 536 F.3d at 1233; <u>Sneed</u>, 496 F. App'x at 27;  <u>Lattimore</u>, 345 F. App'x at 508; <u>Brownlee</u>, 306 F.3d at 1066.

Ground Two: the BMW

The loss calculation included $38,469.00 for a BMW Lease (PSR ¶ 37).

Defendant contends that the loss attributed to the BMW was overstated by $21,042.

The record reflects that eight months before filing for bankruptcy, Defendant executed

and prepaid a two year lease for a 2006 BMW, after which he maintained control of the

vehicle (PSR ¶ 21; doc. 113, exh. B).  The full amount of this undisclosed lease

payment was included in the amount of loss to the bankruptcy trustee (PSR ¶ 37).

Defendant now contends that counsel should have objected to this determination of

loss.

Defendant's argument that the loss was overstated is based on his assertions

that (1) Defendant was making monthly payments on the lease; and (2) the bankruptcy

trustee took possession of the vehicle in January of 2007, at which time the remaining

balance of the lease was in excess of $20,837.00.   These assertions are contradicted

by the facts as set forth in the PSR (*see* PSR ¶ 21).  Furthermore, the Government has

submitted a copy of the Global Imports Motor Vehicle Lease Agreement (Pre-pay) that

reflects that Defendant made one single payment for the BMW lease in the amount of

$38,469,12 on March 16, 2006, and that he retained possession of the vehicle until

March 31, 2008 (doc, 113, exhs. B, C).  Thus, because the basis for Defendant's

unsupported argument is refuted by the record, he has not shown counsel was

constitutionally ineffective for his failure to challenge this loss amount.  *See* Freeman,

536 F.3d at 1233; Sneed, 496 F. App'x at 27;  Lattimore, 345 F. App'x at 508; Brownlee,

306 F.3d at 1066.

Ground Three: Sophisticated Means

Defendant next objects to the application of the adjustment for sophisticated means pursuant to § 2B1.1(b)(9)(A) (doc. 108 at 19).  Although counsel had initially objected to the application of this adjustment, (doc. 75 at 3), counsel later stated he did not recall the objection, and conceded that "there were enough nondisclosures and other matters that went on in this case" that the defense did not have an objection to the sophisticated means adjustment (*id.* at 71).  The court independently found that the adjustment was justified, noting that in addition to moving the leased boats out of the jurisdiction, the case involved "fairly complicated tax returns with lots of carry backs, and some other complications that do make it a sophisticated means" (*id.* at 71–72).  The arguments Defendant now raises regarding the concealed lease payments on real estate, the Harley Davidson and Gondola Sales on Ebay, and the BMW lease would not have negated the court's finding that Defendant's tax returns supported the application of the adjustment.[6]  *See e.g.,* United States v. Yue, 186 F. App'x 872 (11th Cir. 2006) ("sophisticated means" involves more than minimal planning) (citing United Statets v. Humber, 255 F. 3d 1308, 1314 (11th Cir. 2001)); United States v. Kimbrough, 297 F. App'x 960, 961 (11th Cir. 2008).  Counsel was not constitutionally ineffective for his failure to raise these arguments in opposition to the application of the adjustment.  *See* Lattimore, 345 F. App'x at 508;  Freeman, 536 F.3d at 1233; Sneed, 496 F. App'x at 27; Brownlee, 306 F.3d at 1066.

---

[6]The only cases cited by Defendant, United States v. Norton, 176 F. App'x 992 (11th Cir. 2006), and United States v. Booker, 543 U.S. 220 (2001), are inapposite.

Ground Four

Defendant claims that counsel was constitutionally ineffective in that he failed to challenge the loss attributed to the tax fraud charged in Count Twenty-One.  In conjunction with Defendant's 2001 Individual Tax return, which was filed on April 5, 2003, he submitted a signed declaration made under penalty of perjury indicating an expense of $554,622.00 (PSR ¶ 28).  Defendant claimed that he, as a general partner of his financial firm, had reimbursed limited partners for investment losses they had incurred (*id.*).  As Defendant admitted at the rearraignment, this expense had not been incurred in 2001 and should not have been included on his 2001 tax return (doc. 57 at 15).  As a result of his inclusion of this unauthorized expense, Defendant underpaid his taxes for 2001 by $216,000 (*id.*).  The court noted that even if, as Defendant claimed, he had made the disbursements in 2002 and 2003, it was not a dollar-for-dollar offset for later years because different income in different years produces different results (*id.*).  The court further inquired whether by listing the expense in 2001 rather than in 2002 or 2003, Defendant benefitted in the total amount of tax he paid for all three years (*id.*).  Defendant responded "Yes, I guess.  I haven't done that calculation; but, yes" (*id.*).  For Defendant to now claim that because he reimbursed the investors, the IRS "lost nothing" is disingenuous (doc. 108 at 25).  Furthermore, the Government represents that, despite Defendant's bald assertions under oath to the court at sentencing, there is no evidence that Defendant ever paid back the investors, and in fact, it states that numerous of Defendant's limited partners were prepared to testify at Defendant's trial that he had not repaid any of their investment monies (doc. 113 at 29).

Counsel was not constitutionally ineffective for his failure to object to this loss amount.
See Freeman, 536 F.3d at 1233; Sneed, 496 F. App'x at 27;  Lattimore, 345 F. App'x at
508; Brownlee, 306 F.3d at 1066.

        Ground Five

        Defendant claims that counsel was constitutionally ineffective when he failed to
object to the determination of loss with respect to Count Twenty-Three, tax fraud
associated with Defendant's 2002 tax return.  Defendant asserts that the alleged
$280,112 loss of tax revenue to the Government was overstated because it was not a
permanent loss.

        In Defendant's 2005 tax return, he falsely overstated his "basis" in investment
property he sold in 2005 by $1,967,720.00 (PSR ¶ 31).[7]  He admitted at rearraignment
that he had essentially "made up the figure" (doc. 57 at 17).  The omission of the long-
term capital gains of over $1.9 million from the sale of property did not result in
additional tax due on the 2005 return due to other losses Defendant claimed (PSR ¶
32).  However, Defendant benefitted from this false statement.  When he filed his 2002
tax return, he offset his taxable income with a net operating loss derived from the
reported long-term capital loss on the 2005 tax return (PSR ¶ 32).  The resultant tax
loss from the fraudulent return was $280,112 (PSR ¶ 33).  Defendant's speculation that
the inflated basis was offset in a later tax return is unsupported.  Counsel was not

_____

        [7]The 2005 tax fraud was charged in Count Twenty-Two and was not one of the
counts to which Defendant pleaded guilty (see doc. 57 at 16).

constitutionally ineffective for his failure to object.  *See* <u>Freeman</u>, 536 F.3d at 1233;

<u>Sneed</u>, 496 F. App'x at 27;  <u>Lattimore</u>, 345 F. App'x at 508; <u>Brownlee</u>, 306 F.3d at 1066.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has not shown

that any of the claims raised in his motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing

is warranted.  Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of

a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000)

(explaining how to satisfy this showing) (citation omitted).  Therefore, it is also

recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  If there is an objection to this recommendation by either party, that party may

bring this argument to the attention of the district judge in the objections permitted to

this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 108) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 15th day of April, 2014.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).